IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-HC-2259-FL

| | |
|---|---|
| DAVID HARRELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| D.R. STEPHENS, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court on petitioner's motion to amend (DE # 5). Also before the court is the motion to dismiss, or in the alternative, motion for summary judgment (DE # 14) pursuant to Federal Rule of Civil Procedure 56[1] of respondent D.R. Stephens ("Stephens"). Respondent did not file a response to petitioner's motion to amend. Petitioner, however, filed a response to respondent's motion for summary judgment. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants both petitioner's motion to amend and respondent's motion for summary judgment.

**STATEMENT OF THE CASE**

On December 6, 2010, petitioner, a federal inmate incarcerated at the Federal Correctional Institution-II ("Butner") in Butner, North Carolina, filed this *pro se* habeas petition pursuant to 28 U.S.C. § 2241. Petitioner's petition challenged the following: (1) his designation to a facility more than five (500) miles from his release residence in Miami, Florida; (2) his disciplinary hearing

---

[1] Because respondent attached matters that are outside of the scope of the pleadings, the motion to dismiss will be treated as a motion for summary judgment pursuant to Rule 56.

conducted on April 23, 2010; (3) his award of prior custody credit; and (4) his status in the Inmate Financial Responsibility Program ("IFRP"). Petitioner subsequently filed a motion to amend his petition in order to supplement his claims.

On May 20, 2011, respondent filed a motion to dismiss, or in the alternative, motion for summary judgment, arguing that petitioner's claims are meritless. Petitioner filed a response.

## STATEMENT OF FACTS

The facts seen in the light most favorable to petitioner are as follows. On April 28, 2008, petitioner was convicted, in the United States District Court for the Souther District of Miami, of robbery, conspiracy to obstruct, delay, and affect commerce by robbery, and being a felon in possession of a firearm. Baxter[2] Decl. ¶ 4; Pet. p. 1. Petitioner then was sentenced to an aggregate term of two hundred thirty-five (235) months imprisonment. Baxter Decl. ¶ 4. His current projected release date is February 2, 2016. Id.

On January 8, 2010, while incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey ("Fort Dix"), petitioner was involved in a disciplinary incident involving Officer Scully ("Scully"). Id. ¶ 16. On this date, Scully observed petitioner wearing unauthorized (altered) pants. Id. Attach. 8. Scully twice ordered petitioner to remove the unauthorized pants, but petitioner refused and then attempted to punch Scully. Id.

After the alleged disciplinary incident, the Federal Bureau of Prisons ("BOP") conducted an investigation. Id. ¶ 16 Attach. 8. On April 12, 2010, Lieutenant Hall issued petitioner an incident report charging petitioner with committing the following disciplinary offenses: (1) attempted assault

---

[2] John Baxter is employed by the Bureau of Prisons ("BOP") as a case manager. Baxter Decl ¶ 1. Baxter submitted an affidavit in support of respondent's motion for summary judgment.

of another person (Code 224A); (2) being insolent to staff (Code 312); (3) and refusing to obey an order (Code 307). Petitioner was provided a copy of the incident report on April 12, 2010. Id. ¶ 16. On April 14, 2010, petitioner was advised of his rights, and waived his right to staff representation. Id. ¶ 17.

On April 23, 2010, disciplinary hearing officer ("DHO") A. Boyce held hearing on petitioner's charges. Id. Attach. 8. At the hearing, the DHO considered eight memoranda submitted by staff, as well as the incident report and investigation. Id. ¶ 18 Attach. 8. Petitioner, however, refused to provide a substantive statement, and did not request any witnesses. Id. Based upon the evidence presented, the DHO found petitioner guilty of all three charges. Id.

Petitioner appealed his disciplinary convictions to the BOP's regional director. Id. ¶ 19. On appeal, the regional director found that there was not enough advanced notice in the incident report for the charge of insolence toward staff (Code 312), and that charge was expunged. Id. Petitioner received the following sanctions for his attempted assault conviction (Code 224A): (1) thirty (30) days of disciplinary segregation; (2) twenty-seven (27) days of disallowance of good conduct time (for each of his two concurrent sentences); and (3) ninety (90) days loss of phone privileges. Petitioner additionally received the following sanctions for his refusing to obey an order (Code 307) conviction: (1) fifteen (15) days of disciplinary segregation (concurrent); (2) thirteen (13) days disallowance of good conduct time on each of his two concurrent sentences; and (3) ninety (90) days loss of commissary privileges. Id. ¶ 20.

Following petitioner's disciplinary convictions, his security level was increased from low to medium-security. Id. Attach. 6. The Warden at Fort Dix subsequently requested a greater security transfer (Code 307) to any appropriate medium-security institution. Id. On June 17, 2010, the

3

BOP's Designation and Computation Center approved the Fort Dix Warden's transfer request and petitioner was designated to Butner, a medium security institution. Id. Attach. 5. On July 6, 2010, petitioner was transferred to Butner. Id.

## DISCUSSION

A.  Motion to Amend

Petitioner filed a motion to amend his petition to supplemental his claims. The court finds that justice requires that petitioner be permitted to amend his petition. Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'"). The court will consider petitioner's amended claims along with the claims currently pending before the court.

B.  Motion for Summary Judgment

1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

4

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

    2. Analysis

        a. Transfer

            1. Due Process Claim

Petitioner contends that the BOP failed to act pursuant to Chapter 7 of Program Statement 5100.08,[3] to designate him to a facility within five hundred (500) miles from his release residence in Miami, Florida. Inmates, however, do not have the constitutional right to be incarcerated in any particular prison, jail, or confinement facility of any particular security level. See, e.g., Meachum v. Fano, 427 U.S. 215, 223-24 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) ("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate."); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status [a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.") (quotation omitted). Additionally, the BOP has the authority to designate the location of an inmate's imprisonment, "whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted." 18 U.S.C. § 3621(b).

---

[3] Chapter 7 of BOP Program Statement 5100.08 provides that inmates may be considered for transfer nearer their legal residence "after serving 18 consecutive months of clear conduct in a general population . . . . Once an inmate has been transferred within 500 miles of his or her release residence, no further referrals will be made for nearer release transfer consideration."

5

In this case, the record reflects that, on June 17, 2010, petitioner was transferred from Fort Dix, a low security institution, to Butner, a medium security institution, because his security level increased from low to medium following his disciplinary convictions for the January 8, 2010, incident. This transfer was within the BOP's discretion pursuant to Chapter 7 of Program Statement 5100.08. Likewise, any "nearer release" transfer would be in the BOP's discretion.[4] Based upon the foregoing, the court finds that respondent is entitled to summary judgment for this claim.

2. Equal Protection Claim

Petitioner makes conclusory allegations that the BOP's alleged refusal to transfer him closer to his release residence violates his rights pursuant to the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To succeed on an equal protection claim, a petitioner must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Petitioner has not stated that he was treated differently from any person with whom he is similarly situated, nor has he provided any factual allegations whatsoever to support his claim. Although *pro se* litigants are held to less stringent pleading standards than attorneys, the court is not required to "accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). There is a minimum level of factual support

---

[4] The court notes that petitioner has not alleged that he has satisfied the criteria for a "nearer release" transfer pursuant to Chapter 7 of BOP Program Statement 5100.08.

6

required. White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Because petitioner has not provided any allegations to support his equal protection claim, his claim is without merit.

      b.      Disciplinary Conviction

Petitioner alleges that the disciplinary proceedings arising out of the January 10, 2010, incident violated his rights pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution. The United States Supreme Court has mandated certain procedural safeguards when loss of statutory good-time credit is at issue. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Under the Wolff standard, an inmate is entitled to the following: (1) written notice of the charges at least twenty-four (24) hours in advance of the hearing; (2) a written statement by the fact finders as to the evidence relied on and reasons for disciplinary action; and (3) to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Id. at 564-66. Additionally, the findings of a prison disciplinary board must be supported by some evidence in the record, Walpole v. Hill, 472 U.S. 445, 454-55 (1985), and be made by an impartial adjudicator. Wolff, 418 U.S. at 570-71.

      1.      Challenge to Incident Report

Petitioner contends that Chapter 5 of BOP Program Statement 5270.08[5] requires that the author of the disciplinary incident report be physically present during the alleged disciplinary violation or witness the alleged violation. Chapter 5 of BOP Program Statement 5270.08, however,

---

[5] The court notes that Chapter 5 of BOP Program Statement 5270.08 was repealed and replaced by BOP Program Statement 5207.09, effective August 1, 2011. BOP Program Statement 5270.09 also does not require that the staff member who created the incident report be physically present during the alleged disciplinary violation or witness the alleged violation.

7

does not contains such a requirement.[6] Further, federal regulations regarding the inmate disciplinary process also do not contain such a requirement. See 28 C.F.R. § 541.5. Based upon the foregoing, respondent's motion for summary judgment is granted as to this claim.

2. Sufficiency of the Evidence

Petitioner alleges that his due process rights were violated because the DHO provided greater evidentiary weight to the staff memoranda at his disciplinary hearing. Decisions by a disciplinary board to revoke good-time credits pass scrutiny under the Due Process Clause if there is some evidence in the record to support the conclusions. Hill, 472 U.S. at 454. Federal courts will not review the accuracy of the disciplinary hearing officer's fact finding de novo or for clear error. See Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990). Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [disciplinary hearing officer]." Id. (quotation omitted).

Here, the DHO considered eight staff memoranda, including a memorandum submitted by the victim Scully, as well as the incident report and investigation. Using this evidence, the DHO reasoned:

> Unit 5703 was being evacuated for the purposes of a mass search of the entire unit. ISO Scully was one of the staff members assigned to conduct pat searches of the inmates departing 5703 and initiated a pat search of Harrell. During the pat search, ISO Scully noticed Harrell was wearing unauthorized pants (altered). ISO Scully ordered Harrell to remove the pants. Witness statements corroborate that Harrell was

---

[6] Even if petitioner could establish a violation of a DOC regulation, he still would not be entitled to relief because violations of DOC regulations do not equate to a violation of due process. See Williams v. Taylor, 529 U.S. 362, 412 (2000); Irvin v. Federal Bureau of Prisons, 2009 WL 1811245 (D.S.C. 2009) (citation omitted) ("The Constitution does not require strict adherence to administrative regulations and guidelines.") The court additionally notes that a violation of a BOP Program Statement is not a violation of federal law. Reeb v. Thomas, No. 09-35815, 2011 WL 723106, *3 (9th Cir. Mar. 3, 2011); see also, Reno v. Koray, 515 U.S. 50, 61 (1995) (characterizing BOP Program Statements as interpretive rules and internal agency guidelines).

8

> ordered to remove the unauthorized clothing and refused to do so. Harrell turned to ISO Scully, and moved towards him in an aggressive manner, to which Scully gave Harrell a second order to remove the extra pants. Harrell made contact with ISO Scully's right side. Harrell was witnessed swinging his arms with closed fists in attempt to punch ISO Scully. ISO Scully and other staff took immediate action to control Harrell.

Baxter Decl., Attach. 8. The record additionally reflects that petitioner refused to provide a substantive statement and did not call any witnesses. Id. ¶ 18 Attach. 8. Based upon the foregoing, the court finds that the evidence in the record satisfies the "some evidence" standard, and the Due Process Clause was not violated. See, e.g., Hill, 472 U.S. at 454–56; Baker, 904 F.2d at 932.

### 3. Failure to Provide Names of Staff Witnesses

Finally, petitioner alleges that his due process rights were violated because the incident report did not provide the names of the staff witnesses. Wolff, however, does not require the BOP to provide petitioner with notice of all staff witnesses prior to his disciplinary hearing. Coor v. Stansberry, No. 2008 WL 8289490, * 2 (E.D. Va. Dec. 31, 2008) (citing Scott v. Kilchermann, No. 99-1711, 2000 WL 1434456, *2 (6th Cir. Sept. 18, 2000)). Thus, petitioner has not established a due process violation.

As for the remaining Wolff requirements, petitioner received advance written notice of the disciplinary charges and he received a written statement by the disciplinary hearing officer of the evidence relied on and the reasons for the disciplinary action.[7] Thus, there is no due process violation. Based upon the foregoing, respondent's motion for summary judgment is granted as to these claims.

---

[7] The court notes that petitioner's Code 312 insolence toward staff charge was expunged on appeal. Baxter Decl. ¶ 19. Accordingly, this conviction is not part of the court's due process analysis.

9

c. Prior Custody Credit

Petitioner alleges that he is entitled to 1095 days of prior custody credit for the time he spent in federal custody pursuant to a writ of habeas corpus ad prosequendum. Respondent contends that this claim should be dismissed for abuse of the writ, which in general prohibits inmates from re-litigating the same issues in subsequent habeas applications or from raising new issues in a subsequent habeas proceeding.[8] See Rule 9(b), Rules Governing Habeas Corpus Proceedings; see also McClesky v. Zant, 499 U.S. 467, 489 (1991); Mendez v. United States, No. 04-HC-90-FL, 2004 WL 3327911, *2 n.1 (E.D.N.C. 2004), aff'd by 126 F. App'x 148 (4th Cir. 2005). The government bears the initial burden of pleading abuse of the writ. To meet this burden the government must, with clarity and particularity, note petitioner's prior writ history, identify the claims that appear for the first time, and allege that petitioner abused the writ. McClesky, 499 U.S. at 468. The burden then shifts to the petitioner to disprove abuse by showing cause for failing to raise the relevant claim in his prior petition and actual prejudice resulting from the claim. Id. at 493-94.

Respondent contends that petitioner has abused the writ of habeas corpus because he is attempting to raise a claim that he could and should have brought in two previously filed habeas petitions. Harrell v. Rivera, No. 3:07-2710-DCN-JRM (D.S.C. Aug. 22, 2008), aff'd, 309 F. App'x 701, 2009 WL 196901, *1 (4th Cir. Jan. 26, 2009), and United States v. Harrell, No. 96-22-CR-Seitz (S.D. FL. Jan. 6, 2010), aff'd, No. 10-10505 (11th Cir. July 26, 2010); Resp't's Mem. Exs. 3 and 4. Both of petitioner's prior petitions challenge the calculation of his prior custody credit. In particular,

---

[8] The abuse of the writ doctrine, as set forth in McClesky, 499 U.S. at 489, was not supplanted by the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which prohibits second or successive habeas petitions which raise matters already adjudicated in a previous petition, and requires second successive petitioners raising new claims to be authorized by the appropriate court of appeals. See Zayas v. Immigration and Naturalization Service, 311 F.3d 247, 252-53 (3rd Cir. 2002); 28 U.S.C. §§ 2244(b) and 2255; Young-Bey v. Stansberry, No. 1:08CV1172JCC/JFA, 2010 WL 768611, *4 (E.D. Va. Mar. 4, 2010).

10

in both petitions petitioner asserts that he was entitled to prior custody credit, from April 1, 1996, through April 13, 1999, for the time spent in federal custody on a writ of habeas corpus *ad prosequendum*. Both courts denied petitioner's request for relief. Id.

In order to demonstrate that no abuse of the writ has occurred, a petitioner must explain why he failed to raise the instant issues in a prior petition. An abuse of the writ may be excused under the following circumstances: (1) if a petitioner establishes "cause and prejudice," i.e., that some objective factor external to the petitioner's actions impeded efforts to raise the claim earlier and that actual prejudice resulted from the alleged errors, or; (2) if a petitioner demonstrates that a fundamental miscarriage of justice would result from a failure to entertain the claim. See McClesky, 499 U.S. at 491-96. "Significantly, the cause inquiry focuse[s] on whether the applicant was prevented from including a particular claim in his most recent application." In re Williams, 364 F.3d 235, 239 (4th Cir. 2004) (emphasis omitted).

Here, respondent has properly pleaded abuse of the writ. In turn, petitioner alleges he is able to establish cause and prejudice because the United States District Court for the District of South Carolina and the United States District Court for the Southern District of Florida did not consider the United States District Court for the Eastern District of North Carolina's ruling in Luther v. Vanyur, 14 F. Supp. 2d 773 (E.D.N.C. 1997). However, given that Luther was decided in 1997, petitioner clearly could have raised this argument in the prior action. Accordingly, petitioner has not come forth with any evidence to demonstrate that an external factor impeded his efforts to raise the claim in an earlier action. Petitioner has not adequately shown cause or prejudice as required by McClesky. Therefore, petitioner's claim is dismissed as an abuse of the writ. Because petitioner's claim is dismissed as an abuse of the writ, this court does not reach the merits of this claim.

11

d.  IFRP Refusal Status

Petitioner alleges that the United States District Court for the District of South Carolina ordered that he not be required to participate in the IFRP. Petitioner contends that the BOP's placement of him on IFRP refusal status violates his rights pursuant to the due process clause.

The IFRP is a voluntary program through which inmates work with staff to develop a plan to meet their financial obligations. BOP Program Statement 5380.08. The Fourth Circuit has determined that a sentencing court may not delegate its authority to set the amount and timing of fines to the BOP. United States v. Miller, 77 F.3d 71, 77-78 (4th Cir. 1996). However, the Fourth Circuit also has held that when a fine or other financial obligation is due immediately, the BOP's use of the IFRP program to collect an inmate's court-imposed fine does not violate Miller. See Coleman v. Brooks, 133 F. App'x 51, 53 (4th Cir. May 24, 2005) (citing Matheny v. Morrison, 307 F.3d 709, 712 (8th Cir. 2002)).

In this case, the sentencing court ordered petitioner to make joint and several restitution payments to the victims totaling $71,781.00. Baxter Decl. ¶ 21. The sentencing court further ordered that the restitution payments were payable immediately. Id. Because petitioner's restitution payments were due immediately, the BOP did not usurp the sentencing court's authority to set the time and amount of petitioner's fine payments through the IFRP. Further, to the extent petitioner challenges any sanctions for being placed on IFRP refusal status, these sanctions do not violate due process. See Johnpoll v. Thornburgh, 898 F.2d 849, 851 (2d Cir. 1990); Weinberger v. United States, 268 F.3d 346, 360 (6th Cir. 2001); Dominquez v. Bureau of Prisons, No. 5:06-CT-3088-FL,

2007 WL 4224329, *3 (E.D.N.C. May 15, 2007). Therefore, respondent's motion for summary judgment is granted as to this claim.

## CONCLUSION

For the foregoing reasons, petitioner's motion to amend (DE # 5) is GRANTED and respondent's motion for summary judgment (DE # 14) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 2nd day of March, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge